UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

-------------------------------------------------------------------X   Docket No.
DANNY KEE,

                           Plaintiff,                                  **COMPLAINT**

-against-

                                                                        *PLAINTIFF DEMANDS*
YOUNG ADULT INSTITUTE, INC. d/b/a YAI, and      *A TRIAL BY JURY*
BRETT BURNS, *individually*,

                            Defendant.
-------------------------------------------------------------------X

       Plaintiff DANNY KEE, by and through his attorneys, PHILLIPS & ASSOCIATES, Attorneys at Law, PLLC, against YOUNG ADULT INSTITUTE, INC. d/b/a YAI and BRETT BURNS (collectively as "Defendants") alleges upon knowledge as to himself and his own actions and upon information and belief as to all other matters as follows:

## NATURE OF THE CASE

1. This is a civil action based upon Defendant's violations of Plaintiff's rights guaranteed to him by: (i) **Title VII of the Civil Rights Act of 1964**, as amended ("Title VII"); (ii) **42 U.S.C.** § 1981 ("Section 1981"); (iii) **New York State Human Rights Law**, New York State Executive Law, § 296 et seq. ("NYSHRL"); (iv) **Suffolk County Human Rights Law**, Laws of Suffolk County, New York, Part II § 528 et seq. ("SCHRL"); and (vi) any other claim(s) that can be inferred from the facts set forth herein.

2. Plaintiff seeks redress for the injuries he has suffered as a result of his employer's **discrimination and retaliation** solely on the basis of his race (Black). Plaintiff was the target of racial abuse by his supervisors.

## JURISDICTION AND VENUE

3. Jurisdiction of this Court is proper under 42 U.S.C. §2000e-5(f)(3), and 28 U.S.C. §§1331 and 1343.

4. The Court has supplemental jurisdiction over the claims of Plaintiff brought under state law pursuant to 28 U.S.C. §1367.

5. Venue is proper in this district in that a substantial part of the events or omissions giving rise to the claim occurred within the Eastern District of the State of New York. 28 U.S.C. § 1391(b).

## PROCEDURAL PREREQUISITES

6. Plaintiff timely filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") upon which this Complaint is based.

7. Plaintiff received a Notice of Right ("Notice") to Sue from the EEOC dated July 14, 2022, with respect to the instant charges of discrimination. A copy of the Notice is annexed to this Complaint.

8. This action is being commenced within 90 days of receipt of the Notice of Right to Sue.

## PARTIES

9. Plaintiff Danny Kee ("Plaintiff") is a Black man and a resident of the State of New York, Suffolk County. At all relevant times herein, Plaintiff was an employee of Defendant Young Adult Institute, Inc d/b/a YAI.

10. At all relevant times herein, Plaintiff was and is a "person" and an "employee" entitled to protection as defined by state and federal laws.

11. At all relevant times herein, Defendant Young Adult Institute, Inc. d/b/a YAI ("Defendant") was and is a New York not-for-profit corporation headquartered at 220 East 42nd Street, New York, New York 10017.

12. At all relevant times herein, Defendant "employs" fifteen or more "employees," and is thus an "employer" within the meaning of Title VII, Section 1981, the NYSHRL, and the SCHRL.

13. At all relevant times, Defendant Brett Burns ("BURNS") is and was an employee of Defendant YAI holding the position of supervisor.

14. At all times material, Defendant Burns was Plaintiff's supervisor and had the ability to make decisions regarding the terms and conditions of Plaintiff's employment. Defendant Burns is being sued herein in his official and individual capacities.

## FACTUAL ALLEGATIONS

15. On or about September 22, 2020, Plaintiff began working full-time for Defendant as an Assistant Behavioral Intervention Specialist earning $37,400 annually at Defendant's Deer Park location.  Plaintiff was entitled to overtime in this position.

16. Within the first month of being employed by Defendant, Plaintiff began to experience dismissive and condescending interactions with co-workers.  For example, his supervisor Brett Burns ("Burns"), in one interaction aggressively smacked what he thought was Plaintiff's water bottle off a couch at work, taking Plaintiff's seat, and leaving the water bottle there for hours without apology or explanation.  Between this and other interactions, Plaintiff recognized that he was being discriminated against on the basis of his race.

17. Therefore, on or about October 27, 2020, Plaintiff complained to a supervisor, Michael Coleman ("Coleman"), that he wanted a transfer to a different location because of the hostile work environment being created by his supervisor Burns.  In response, Coleman said that he would grant Plaintiff's request, assured that him things would improve with Burns, and promised him that it would be O.K. and that Plaintiff would be comfortable at work going forward.

18. Beginning on or about November 3, 2020, Burns, in retaliation for Plaintiff's complaints of discrimination, began to deny Plaintiff overtime shifts by removing Plaintiff's name from the schedule and substituting his own name for any available overtime shifts.

19. On or about December 8, 2020 at approximately 6:30 pm, Burns was in conversation with a client, which client was complaining that another client of Defendant's had called him a "nigger." Burns responded by saying: "They don't know their own history. When Black women gave birth they called them niggers. That's part of their history. Slavery. I don't mind when they call us crackers. They call us crackers because we used to crack the whip. So I don't mind being called a cracker. Why should they mind being called a nigger?" Burns followed up by saying "Get back to work!" while making a whipping motion and sound.

20. On or about December 17, 2020, while Plaintiff was eating his lunch, Burns said to Plaintiff, "You's a fat nigger." Plaintiff was deeply humiliated by Burns' statement.

21. Later that day, Plaintiff reported that incident to Coleman. Coleman merely responded, "Wow. He said that?" Distraught, Plaintiff asked to leave for the day and reported the incident to Defendant's Human Resources Assistant Manager, Andrej Drofenik.

22. In or around this time, Plaintiff began to receive personal texts and calls from Burns while outside of work. On one such occasion, Burns called and said "Ima get you," before Plaintiff hung up.

23. On or about December 18, 2020, due to concerns for his safety, Plaintiff requested a transfer to a different location with the same position, pay, and commuting distance.

24. Plaintiff told Defendant that he was O.K. working "as is" until a transfer became available. However, this transfer process became combative, as Plaintiff was told there was no full-time position available and Plaintiff was relegated to working as a substitute.

25. On or around December 22, 2020, Plaintiff began working temporarily as a substitute expecting to take over a permanent position once one became available. Working as a substitute rendered less pay and required additional work as Plaintiff had to call into each one of Defendant's locations every day to determine if there was a shift available.

26. On or around January 5, 2021, Defendant offered to interview Plaintiff for a position as an Assistant Supervisor at Defendant's location in Northport. However, this position would have been a demotion as the Northport location requires Defendant's staff to physically restrain its clients and contains the most behaviorally unique persons in Defendant's program. This position also required an impractical increase in commuting time and therefore Plaintiff was compelled to decline the offer.

27. At or around this time, Christina Velasquez ("Valasquez"), Assistant Supervisor, also began to retaliate against Plaintiff by referring to Plaintiff as a "big rat" for reporting Burns racial harassment to Human Resources.

28. Subsequently, on or around January 29, 2021, Plaintiff and a number of his colleagues went out to eat. Plaintiff paid for the meal as the majority of the attendees planned to "Cash App" him their portion of the bill. When Valasquez sent her portion to him via "Cash App," she sent a picture of a cheese slice instead of indicating what the payment was for. Plaintiff understood this as a reference to him being a "rat" for reporting Burns' racial harassment to Human Resources.

29. On or around January 29, 2021, Lisa Brown, a supervisor for Defendant's North Windsor location, had her assistant resign and began training Plaintiff for an Assistant Supervisor position. She even went so far as to alter his work schedule to suit those of an Assistant Supervisor so that Plaintiff could make an easy transition into the role once the position was posted.

30. On or around February 2, 2021, Defendant was offered a choice between two positions for which he wanted to interview. The first was for the Northport location, which was not an equal position and was a much further commute. The second was for the Spruce Wood location, which Plaintiff expressed interest in and eventually interviewed for on March 25, 2021.

31. In or around the first week of February 2021, Plaintiff was at Defendant's North Windsor location with Christina Riviera. Ms. Riviera wanted to leave, so Plaintiff told her to follow the chain of command. Ms. Riviera did not follow the chain of command and left. Plaintiff was reprimanded because there was always supposed to be a 1-to-1 ratio of female to male staff at this location. Regardless, Plaintiff was subbing and had not been informed of the ratio.

32. On or around February 24, 2021, Brown informed Plaintiff about Assistant Supervisor position at Defendant's North Windsor location that had been posted on Workday and suggested that Plaintiff apply, which Plaintiff did.

33. In the last week of February 2021, Ava Padmore, Human Resources Director, told Plaintiff not to go back to the Deer Park location after requesting a transfer, despite Burns no longer working there.

34. On or around March 4, 2021, Brown and Lisa Renne, Director, interviewed Plaintiff for the Assistant Supervisor position at North Windsor. Plaintiff had previously requested that he not be transferred to any of Lisa Renne's houses, as Renne has a very close relationship with Burns and Plaintiff felt he would likely be retaliated against by Renne if transferred to the same location. Regardless, Renne conducted the interview in an extremely hostile manner. Instead of discussing the position, Plaintiff was chastised about the incident with

6

Christina Riviera at the North Windsor location. Ultimately, Plaintiff was denied the position despite his years of experience.

35. Upon information and belief, Defendant's stated reason for failing to hire Plaintiff was pretextual and he was not selected for the position because he had complained about racial harassment in the workplace.

36. On or around March 25, 2021, Plaintiff sought to be interviewed for the Assistant Supervisor position at the Spruce Wood location. Initially, Human Resources told Plaintiff to conduct a residential visit, which consisted of meeting the staff and the constituents served there, in order to determine if the position was right for him. To Plaintiff's surprise he was interviewed for the position that day. Ultimately, Plaintiff was not chosen for the position.

37. Plaintiff now works at Defendant's Bayshore location. His hours have been reduced to approximately sixteen (16) hours per week rather than forty (40).

38. Furthermore, Defendant now wants to demote Plaintiff to a "floater," in which Plaintiff would substitute for full-time employees at the Northport, Bayshore, and North Windsor location. This demotion would come with a reduction in pay.

39. Plaintiff is currently seeing a therapist for emotional distress and has been diagnosed with PTSD. His psychiatrist has declared him 100% disabled and prescribed him Xanax and Zoloft to address his condition.

40. As a result of Defendant's actions, Plaintiff felt humiliated, degraded, victimized, embarrassed and emotionally distressed.

41. As a result of the Defendant's discriminatory and intolerable treatment of Plaintiff, he suffered severe emotional distress.

42. As a result of the acts and conduct complained of herein, Plaintiff has suffered, and will continue to suffer, the loss of income, the loss of salary, bonuses, benefits and other compensation which such employment entails, and Plaintiff has also suffered future pecuniary losses, emotional pain, suffering, inconvenience, loss of enjoyment of life, and other non-pecuniary losses.

43. Defendant's actions and conduct were intentional and intended to harm Plaintiff.

44. As Defendant's conduct has been malicious, willful, outrageous, and conducted with full knowledge of the law, Plaintiff demands punitive damages as against Defendant.

**FIRST CAUSE OF ACTION**
*Race Discrimination in Violation of Title VII*

45. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint. Title VII of the Civil Rights Act of 1964, as amended 42 U.S.C. § 2000e-2(a)(1), states in relevant part:

> It shall be an unlawful employment practice for an employer to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to their compensation, terms, conditions, or privileges of employment, because of such individual's **race**, color, religion, sex, or national origin[.]

46. As described above, Defendant discriminated against Plaintiff on the basis of his race, in violation of Title VII, by creating, fostering, condoning, accepting, ratifying, and/or negligently failing to prevent or remedy a hostile work environment that included, among other things, severe or pervasive harassment of Plaintiff based on his race.

47. As a result of the unlawful discriminatory conduct of Defendant in violation of Title VII, Plaintiff has suffered, and continues to suffer, severe mental anguish and emotional distress, including, but not limited to depression, humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence, and emotional pain and suffering, for

which he is entitled to an award of monetary damages and other relief.

48. The unlawful discriminatory actions of Defendant constitute malicious, willful, and wanton violations of Title VII, for which Plaintiff is entitled to an award of punitive damages.

## SECOND CAUSE OF ACTION
*Retaliation in Violation of Title VII*

49. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint.

50. Title VII of the Civil Rights Act of 1964, *as amended*, 42 U.S.C. §2000e-3(a) provides that it shall be unlawful employment practice for an employer:

> [T]o . . . discriminate against any of his employees . . . because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted or participated in any manner in an investigation, proceeding, or hearing under this subchapter.

51. As described above, Plaintiff engaged in protected activities, including making internal complaints regarding discrimination based on Plaintiff's race.

52. As described above, after Plaintiff engaged in activity protected by Title VII, Defendant took adverse actions against Plaintiff by, *inter alia*, threatening Plaintiff's employment and failing to promote, that would dissuade a reasonable employee from making or supporting a similar complaint of discrimination.

53. As a result of the retaliatory conduct of Defendant in violation of Title VII, Plaintiff has suffered, and continues to suffer, pecuniary losses, severe mental anguish and emotional distress, including, but not limited to depression, humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence, and emotional pain and suffering, for which he is entitled to an award of monetary damages, as well as past and future lost wages and benefits and other compensatory damages, and other relief.

54. The unlawful discriminatory actions of Defendant constitute malicious, willful, and wanton violations of Title VII, for which Plaintiff is entitled to an award of punitive damages.

### THIRD CAUSE OF ACTION
*Race Discrimination in Violation of Section 1981*

55. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint.

56. 42 U.S.C. § 1981 states in relevant part as follows:

    All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other.

57. Defendant engaged in unlawful employment practices prohibited by 42 U.S.C. § 1981, by discriminating against Plaintiff because of his race (Black).

58. Plaintiff was subjected to negative disparate treatment, discrimination, humiliation, embarrassment, adverse employment actions and loss of employment due to his race.

### FOURTH CAUSE OF ACTION
*Retaliation in Violation of Section 1981*

59. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint.

60. By the acts and practices described above, Defendant retaliated against Plaintiff for his opposition to unlawful discrimination under 42 U.S.C. §1981.

61. Defendant acted with malice and/or reckless indifference to Plaintiff statutorily protected rights.

62. Plaintiff is entitled to the maximum amount of damages allowed under this statute.

## FIFTH CAUSE OF ACTION
*Race Discrimination in Violation of the NYSHRL*

63. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint.

64. <u>New York State Executive Law</u> §296(1)(a) provides that:

    It shall be an unlawful discriminatory practice: For an employer or licensing agency, because of an individual's age, **race**, creed, color, national origin, sexual orientation, military status, sex, disability, predisposing genetic characteristics, marital status, or domestic violence victim status, to refuse to hire or employ or to bar or to discharge from employment such individual or to discriminate against such individual in compensation or in terms, conditions or privileges of employment.

65. As described above, Defendant discriminated against Plaintiff on the basis of his race, in violation of NYSHRL, by creating, fostering, condoning, accepting, ratifying, and/or negligently failing to prevent or remedy a hostile work environment that included, among other things, harassment of Plaintiff based on his race.

66. As a result of Defendant's unlawful discriminatory conduct in violation of the NYSHRL, Plaintiff has suffered, and continues to suffer, economic loss, for which he is entitled to an award of monetary damages and other relief.

67. As a result of Defendant's unlawful discriminatory conduct in violation of NYSHRL, Plaintiff has suffered, and continues to suffer, severe mental anguish and emotional distress, including, but not limited to, depression, humiliation, embarrassment, stress and anxiety, and emotional pain and suffering, for which he is entitled to an award of monetary damages and other relief.

68. Defendant's unlawful discriminatory actions constitute malicious, willful, and wanton violations of the NYSHRL, for which Plaintiff is entitled to an award of punitive damages.

## SIXTH CAUSE OF ACTION
*Retaliation in Violation of the NYSHRL*

69. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint.

70. New York State Executive Law § 296(7) provides that:

> It shall be an unlawful discriminatory practice for any person engaged in any activity to which this section applies to retaliate or discriminate against any person because he or she has opposed any practices forbidden under this article or because he or she filed a complaint, testified, or assisted in any proceeding under this article.

71. As described above, Plaintiff engaged in protected activities, including making internal complaints regarding discrimination based on Plaintiff's race.

72. As described above, after Plaintiff engaged in activity protected by the NYSHRL, Defendant took adverse actions against Plaintiff by, *inter alia*, threatening Plaintiff's employment and failing to promote, that would dissuade a reasonable employee from making or supporting a similar complaint of discrimination.

73. As a result of Defendant's retaliatory conduct in violation of the NYSHRL, Plaintiff has suffered, and continues to suffer pecuniary losses, severe mental anguish and emotional distress, including, but not limited to depression, humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence, and emotional pain and suffering, for which he is entitled to an award of monetary damages, as well as past and future lost wages and benefits and other compensatory damages, and other relief.

## SEVENTH CAUSE OF ACTION
*Race Discrimination in Violation of SCHRL*

74. Plaintiff repeats, reiterates, and re-alleges each and every allegation set forth above with the same force and effect as if more fully set forth herein.

75. The Regulatory Local Laws of Suffolk County § 528-7(A)(1) provides that

12

> It shall be an unlawful discriminatory practice: For an employer to refuse to hire or employ or to bar or to discharge from employment or to discriminate against any individual in promotion, compensation or in terms, conditions or privileges of employment because of such individual's group identity or status as a victim of domestic violence.

76. The Suffolk County Regulatory Local Laws §528-6 defines group identity as "[t]he actual or perceived **race**, color, creed, age, national origin, alienage or citizenship status, gender, sexual orientation, disability, marital status, or familial status of any individual, as well as the actual military status of any individual." (Emphasis added.)

77. As described above, Defendant discriminated against Plaintiff on the basis of his race in violation of the SCHRL by, including but not limited to, subjecting him to disparate working conditions, and denying him the opportunity to work in an employment setting free of unlawful discrimination and harassment.

78. As a result of Defendant's unlawful discriminatory conduct in violation of the SCHRL, Plaintiff has suffered, and continues to suffer, economic loss, for which he is entitled to an award of monetary damages and other relief.

79. As a result of Defendant's unlawful discriminatory conduct in violation of the SCHRL, Plaintiff has suffered, and continues to suffer, mental anguish and emotional distress, including, but not limited to, depression, humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence, and emotional pain and suffering, for which he is entitled to an award of monetary damages and other relief.

**EIGHTH CAUSE OF ACTION**
*Retaliation in Violation of SCHRL*

80. Plaintiff repeats, reiterates, and re-alleges each and every allegation set forth above with the same force and effect as if more fully set forth herein.

81. The Suffolk County Regulatory Local Laws § 528-12(B) provides that it shall be an

13

unlawful discriminatory practice for an employer "to retaliate or discriminate against any individual because he or she has opposed any practice forbidden under this article…."

82. As described above, Plaintiff engaged in protected activities, including making internal complaints regarding discrimination on the basis of Plaintiff's race.

83. As described above, after Plaintiff engaged in activity protected by the SCHRL, Defendant's took adverse actions against Plaintiff by, *inter alia*, threatening his employment and failing to promote, that would dissuade a reasonable employee from making or supporting a similar complaint of discrimination.

84. As a result of Defendant's retaliatory conduct in violation of the SCHRL, Plaintiff has suffered, and continues to suffer pecuniary losses, severe mental anguish and emotional distress, including, but not limited to depression, humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence, and emotional pain and suffering, for which she is entitled to an award of monetary damages, as well as past and future lost wages and benefits and other compensatory damages, and other relief.

## JURY DEMAND

85. Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiff demands a trial by jury on all claims in this action.

**WHEREFORE**, Plaintiff respectfully requests a judgment against Defendant:

A. Declaring that Defendant engaged in unlawful employment practices prohibited by Title VII, Section 1981, NYSHRL, and SCHRL in that Defendant discriminated against Plaintiff on the basis of his race and retaliated against Plaintiff for engaging in protected activity;

B. Restraining Defendant from any retaliation against Plaintiff for participating in any form in this litigation;

C. Declaring preliminary and permanent injunctions against Defendant and their officers,

owners, agents, successors, employees, representatives, and any and all persons acting in concert with them, from engaging in each of the unlawful practices, policies, customs, and usages set forth herein;

D. Awarding damages to Plaintiff for all damages resulting from Defendant's unlawful discrimination and to otherwise make him whole for any losses suffered as a result of such unlawful employment practices;

E. Awarding Plaintiff compensatory damages for mental, emotional and physical injury, distress, pain and suffering and injury to his reputation in an amount to be proven;

F. Awarding Plaintiff punitive damages;

G. Awarding Plaintiff attorneys' fees, costs, and expenses incurred in the prosecution of the action; and

H. Awarding Plaintiff such other and further relief as the Court may deem equitable, just and proper to remedy Defendant's unlawful employment practices.

Dated: Garden City, New York
September 23, 2022

**PHILLIPS & ASSOCIATES,
ATTORNEYS AT LAW, PLLC**

By: _____/s/_____
Joshua M. Friedman, Esq.
*Attorneys for Plaintiff*
585 Stewart Avenue Suite 410
Garden City, New York 11530
T: (212) 248-7431
F: (212) 901-2107
jfriedman@tpglaws.com

15